**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 14 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SHARON K. BEERY,

      Plaintiff-Appellant,

v.

UNIVERSITY OF OKLAHOMA
BOARD OF REGENTS, a public body
corporate,

      Defendant-Appellee.

No. 98-6459
(D.C. No. 97-CV-1332-T)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **LUCERO** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Sharon K. Beery appeals the district court's grant of summary judgment, on her age discrimination claim, in favor of defendant Board of Regents of the University of Oklahoma. Because plaintiff did not raise a genuine issue as to whether she was replaced by a younger individual, we affirm.

Plaintiff, a high school graduate, began her employment at the University of Oklahoma on September 5, 1967, as a Clerk-Typist I. She was promoted eventually to the position of Administrative Assistant to the Athletic Director, performing this job first for Athletic Director Duncan until May 1996, then for an interim director until September 1996, and finally for Athletic Director Owens until her termination on March 19, 1997. Plaintiff was 48 years old when discharged, and was earning a salary of $39,000.

On December 16, 1996, 40-year-old Bob King, a former banker, began working as a Special Assistant to the Athletic Director at a salary of $69,500. His initial responsibilities included assisting in preparing and balancing the athletic department's budget and getting familiar with the department's operations. Athletic Director Owens testified he intended to expand King's role into an associate athletic director position, and, in July 1997, King was promoted to Senior Associate Athletic Director. According to plaintiff, King assumed a number of plaintiff's higher-level duties, including supervising the clerical staff,

-2-

assisting the Athletic Director in preparing the budget, and returning sensitive phone calls and letters.

King and Owens allegedly became dissatisfied with plaintiff's work and King recommended that she be terminated. On March 19, 1997, Owens issued a press release announcing the reorganization of the athletic department. Plaintiff was terminated as part of this reorganization, and on March 28, the University posted an opening for a Secretary II in the athletic director's office. On July 1, 1997, 48-year-old Pam Kelleher was transferred from the basketball office to become the Administrative Coordinator to the Athletic Director, performing many of plaintiff's former duties. Kelleher's salary, $29,800, was determined according to the same pay scale as plaintiff's. Plaintiff's duties related to the host recruitment monies were assumed by the athletic department accounting office.

Plaintiff brought this action against the University, alleging she was terminated based on her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. The district court granted summary judgment in favor of defendant, ruling (1) plaintiff failed to make a prima facie case of discrimination because she did not show she was replaced by a younger individual, and (2) even if she made a prima facie case, she failed to raise a genuine issue whether the University's proffered reason for its decision was pretextual. This appeal followed.

We review a grant of summary judgment de novo, applying the same standard as that applied by the district court. See Charter Canyon Treatment Ctr. v. Pool Co. , 153 F.3d 1132, 1135 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, we view the facts and reasonable inferences therefrom in a light most favorable to the nonmoving party. See Kaul v. Stephan , 83 F.3d 1208, 1212 (10th Cir. 1996).

To prevail on an ADEA claim under the traditional Title VII burden-shifting approach set forth in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802-04 (1973), a plaintiff first must make a prima facie case by showing (1) she was within the protected age group; (2) she was doing satisfactory work; (3) she was discharged; and (4) a younger person replaced her. See Ingels v. Thiokol Corp. , 42 F.3d 616, 621 (10th Cir. 1994). Because in cases of reduction in force or reorganization it is often impossible for an employee to show she was replaced by a younger individual, the fourth prong may be met by showing that similarly situated younger employees were treated more favorably. See id. ; Branson v. Price River Coal Co. , 853 F.2d 768, 771 (10th Cir. 1988). Upon such a showing, the defendant must articulate a nondiscriminatory reason for the employment

-4-

decision, see Ingels, 42 F.3d at 621, and the plaintiff must then show that the proffered reason was not the true reason for the decision, see Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Plaintiff argues she satisfied the fourth prong of the prima facie case by showing that she was replaced by 40-year-old Bob King. When an employee's duties are assumed by more than one person, courts look at the age of the persons assuming the employee's primary or predominant functions to see if the employee was "replaced" by a younger individual. See, e.g., Keathley v. Ameritech Corp., 187 F.3d 915, 920-21 (8th Cir. 1999) (holding prima facie case established when employee's largest and most lucrative accounts transferred to two younger individuals); Pitasi v. Gartner Group, 184 F.3d 709, 716-17 (7th Cir. 1999) (holding no prima facie case made when employee's primary duties were split between older worker and a similarly aged worker, and only incidental duties were assumed by a significantly younger new hire, and terminated employee could not have performed job for which new person hired); Schwager v. Sun Oil Co., 591 F.2d 58, 61 (10th Cir. 1979) (plaintiff made prima facie showing when sixty percent of sales territory was taken over by substantially younger persons).

Here, plaintiff's evidence shows she performed the following secretarial and administrative functions for the Athletic Director: (1) answering the phone; (2) typing correspondence; (3) screening the Director's calls; (4) opening and

distributing the mail; (5) assisting in preparing the budget; (6) assisting in office personnel decisions; (7) assisting in establishing office procedures; (8) doing specially assigned tasks; (9) returning calls for the Director; (10) coordinating with the Director's senior staff on projects; (11) maintaining the Director's schedule of events and coordinating his travel arrangements; (12) filing expense accounts and tracking reimbursements; (13) monitoring income received for the minority scholarship fund; (14) monitoring the budget; (15) coordinating the Director's ticket accounts for football and men's basketball; (16) administering the host recruitment fund (approximately 10% - 15% of plaintiff's total duties from September to June); (17) serving as host during home football games; (18) obtaining estimates for office purchases; (19) maintaining an inventory of office equipment and furniture; (20) serving as administrative assistant to the Athletics Council Executive Secretary, including coordinating the agenda and meeting schedule, notifying members, securing action between meetings, and maintaining records; (21) taking and transcribing Council meeting minutes; (22) maintaining personnel records regarding vacation, sick leave, and travel related events; (23) coordinating the weekly meetings; and (24) supervising clerical staff. Plaintiff testified, however, that she did not participate in the department's decision making processes. See Appellant's App. I at 78.

Pam Kelleher assumed many of these job duties, including (1) answering the phone; (2) opening and sorting the mail and distributing it to the appropriate recipient; (3) typing correspondence for both Director Owens and Associate Director King; (4) filing records; (5) making the Director's travel arrangements; (6) submitting the Director's expense claims for reimbursement; (7) coordinating with the president's office and the Regents; (8) taking notes at the staff meetings; (9) acting as executive secretary for the Athletics Council; (10) setting up the Council meetings, and sending out notices of the meetings; (11) taking minutes at the Council meetings; (12) working with athletic department donors; and (13) working on special projects and special events with the Director.

These secretarial and administrative duties assumed by Kelleher are clearly of the same basic nature as the duties performed by plaintiff. Testimony and affidavits by Owens, King, Kelleher, and Manager of Staff Resources Thompson, support this conclusion, stating that Kelleher performed basically the same tasks as those performed by plaintiff. See id. at 38, 41, 43, 120. Although plaintiff's job title differed from Kelleher's, the duties described for the Administrative Coordinator position are almost identical to the duties listed by plaintiff in her affidavit. Compare id. at 99-100 with id., vol. II at 150-154. In addition to the duties assumed by Kelleher, another ten to fifteen percent of plaintiff's former

-7-

responsibilities were taken over by the accounting department when it began administering the host recruitment fund.

In contrast, the duties assumed by King were more related to his budgetary and supervisory roles, including assisting the Director in preparing the budget, returning calls of a confidential or sensitive nature, and supervising the clerical staff. There is no evidence that plaintiff ever held the position for which King was hired, or that she was qualified to do so. See Pitasi, 184 F.3d at 717. King's high salary tends to negate any inference that he was hired to replace plaintiff, as well as the fact that he performed his job for four months before plaintiff was discharged. Any clerical duties assumed by King appear to be incidental to his position. Even viewing the evidence in the light most favorable to plaintiff, it does not raise a triable issue whether King assumed her primary responsibilities so as to be considered her replacement.

Here, if plaintiff was replaced by anyone it was by Pam Kelleher. More accurately, it appears plaintiff's duties were distributed as part of a reorganization of the Athletic Department, and that she was replaced by no one. As plaintiff has not argued on appeal that she was treated unfavorably compared to her younger coworkers, we do not consider whether the record contains such evidence. Summary judgment was proper.

The judgment is AFFIRMED.

Entered for the Court


David M. Ebel
Circuit Judge